IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| TIMOTHY CHADWICK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-6115-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Kathryn Tassinari
Drew L. Johnson
1700 Valley River Drive
Eugene, Oregon  97401

      Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

Franco L. Becia
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Timothy Chadwick brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for supplemental security income benefits ("SSI").

I reverse the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir.

2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the

claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity,

disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments.  A

severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not

have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the

past.  If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and

416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ concluded that Chadwick suffered from sleep apnea, chronic obstructive pulmonary disease (COPD), benign cysts, hyperkeratosis of the feet and hands, and neck pain with headaches which may be stress related, and that these impairments are considered to be severe within the meaning of the regulations. However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ also concluded that Chadwick retains the residual functional capacity to perform sedentary work, so long as it does not involve concentrated exposure to wet, high humidity or fumes, or hazards such as ropes, ladders and scaffolds.

Accordingly, the ALJ found that Chadwick could perform his past relevant work as a nursery truck driver, as he had performed it, but not as generally performed in the national economy.  In addition, even if Chadwick could not perform his past relevant work, the ALJ determined that plaintiff could work as an escort vehicle driver, document preparer, and eyeglass assembler.

## FACTS

Chadwick, who was 46 years old at the time of hearing, complained of cysts and tumors, foot problems, sleep apnea, asthma, COPD with shortness of breath, headaches and hearing loss. Chadwick has a tenth grade education and says he is illiterate.

Chadwick received disability benefits between March 21, 1985 and April 2002, at which time he became ineligible due to his wife's income.  He reapplied for benefits, alleging an onset date of July 2, 2003, but his request was denied initially and on reconsideration.  Plaintiff amended his onset date to July 21, 2005, because his income exceeded substantial gainful activity while working prior to this date.  The ALJ held a hearing and issued a decision on February 22, 2006 denying plaintiff's claim.  The Appeals Council denied plaintiff's request for review on April 6, 2006.

On October 20, 2003, Gerold Stark, M.D. diagnosed plaintiff with hidradenitis suppurativa.[1]  Plaintiff has had a long history with the disease.  The disease causes painful abscesses, cysts and pustules on plaintiff's face, neck, under both arm pits and in the rectal area between the legs.  These lesions have needed to be excised periodically.  Dr. Stark also diagnosed plaintiff with hyperkeratosis.[2]  The disease causes callusing on his feet and sometimes on his hands, which create painful lesions from skin fissures.  John S. Murphy, DPM, a podiatrist looking at plaintiff's feet on November 17, 2003, described plaintiff's condition as "the worst case of hyperkeratosis that I have seen in 17 years."  Tr. 133.  Dr. Murphy periodically debrided plaintiff's foot calluses.

On October 20, 2003, Dr. Stark also noted plaintiff suffers from COPD, sleep apnea, and migraine headaches.  Plaintiff uses continuous positive airway pressure ("CPAP") to help resolve the sleep apnea.  On February 4, 2004, plaintiff reported he was doing "reasonably well" with the CPAP, but continued to experience restless leg syndrome and restlessness at night.  Plaintiff takes Tylenol with Codeine to help.

On November 25, 2003, Dr. Stark opined, "In regard to his disability, in view of his severe hydradenitis as well as severe hyperkeratosis palmars and plantaras, as well as in view of his COPD and multiple other medical issues, I feel that he will not be able to hold a regular job."  Tr. 132.

---

[1]"A chronic suppurative inflammatory disease of the apocrine sweat glands."  Merriam Webster's Medical Desk Dictionary 339 (1996).

[2]"Hypertrophy of the stratum corneum layer of the skin"  Id. at 358.  Keratosis is defined to be "a disease of the skin marked by overgrowth of horny tissue."  Id. at 414.

Plaintiff reported symptoms of depression on February 17, 2004, and was prescribed Zoloft.

On September 6, 2005, Cecilia Keller, MD, a neurologist, evaluated plaintiff for his neck pain, headaches, left arm numbness and weakness. Dr. Keller opined that plaintiff's headaches "are secondary to his significant stenosis in the cervical neck region." Tr. 183.

Before plaintiff's amended onset date of July 21, 2005, plaintiff had done some seasonal work for a nursery, driving a small truck to deliver plants all over Oregon, Washington and one city in California. He testified that his employer let him take a few weeks off when he needed to have cysts drained and to give them time to heal so they did not become infected by dust and fertilizers. He was laid off from the job and received unemployment.

Plaintiff testified that he mows the yard, tries to keep the place clean, goes fishing occasionally, likes to hunt but has not been able to do too much of that anymore, plays video games, drives his wife to work, meets friends for coffee, and watches his 18-year old who has special needs. Plaintiff testified that his lesions are very painful, and that he has been getting more of them than he used to because he has been pushing himself harder.

Plaintiff's wife, Grace Chadwick, testified that she helps plaintiff put his socks and shoes on and has had to button his pants for him because he has trouble bending down and has trouble with his arm. She testified that he was able to go fishing twice in 2004, and maybe hunting twice. She testified that in 2005, he did not go fishing at all, and he took his nephew hunting a couple of weekends, but had to come home because he was not feeling well. She testified that he had experienced panic attacks in the last few years.

Plaintiff has been smoking one to two packs of cigarettes a day for over thirty years.

**DISCUSSION**

I.    Credibility Determination

The ALJ found the plaintiff's symptom testimony not entirely credible because he had worked in 2004 and 2005, and left the job because of lack of work.  He also collected unemployment, which demonstrates he was available and able to work.   In addition, the ALJ noted that plaintiff's cigarettes and coffee were a higher priority than his medication for depression.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom.  The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion.  Id. at 1284.

Plaintiff provided objective evidence of his impairments, and there is no evidence of malingering. Consequently, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony. The ALJ correctly noted that plaintiff stopped working in July 2005 because he was laid off. This reason, standing alone, might be one reason to find plaintiff's testimony about the severity of his symptoms not credible. However, plaintiff began experiencing severe headaches at this time, and an MRI in August 2005 revealed severe central canal stenosis. Dr. Keller believed that the headaches were due to the stenosis in plaintiff's neck. Plaintiff's employer was also aware of his hidradenitis suppurativa, and allowed him to take several weeks off at a time to allow the lesions to heal. As for collecting unemployment, Oregon law provides for unemployment even if a person can only work part-time. OAR 471-030-0036(2)(b). With regard to plaintiff's depression medication, plaintiff is not claiming that depression is a "severe" impairment within the meaning of the regulations. As a result, plaintiff's credibility cannot be challenged on the basis that he is no longer taking medication to treat his depression.[3] In other words, it is irrelevant that plaintiff is not following his physician's recommendations regarding treating any depression because he is not alleging disabling affects from depression. Accordingly, these are not clear and convincing reasons, supported by substantial evidence in the record, to find plaintiff's testimony not credible.

------

[3]The ALJ also challenged Grace Chadwick's testimony that plaintiff suffered from panic attacks because there was nothing in the record to support her testimony. However, plaintiff did not claim to have experienced any panic attacks. In sum, the absence of any information in plaintiff's medical records about panic attacks speaks only to the lay witness credibility, not to plaintiff's credibility.

II.    <u>Medical Evidence</u>

The ALJ did not give controlling weight to the opinion of plaintiff's treating physician, Dr. Stark, that "in view of [plaintiff's] severe hydradenitis as well as severe hyperkeratosis palmars and plantaras, as well as in view of his COPD and multiple other medical issues, I feel that he will not be able to hold a regular job" Tr. 16, 132.  The ALJ concluded that Dr. Stark's opinion was undermined by plaintiff's seasonal job at greater than substantial gainful activity levels, and the number and type of activities in which plaintiff takes part.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  <u>Lester</u>, 81 F.3d at 830.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  <u>Id.</u> at 831.  Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record.  <u>Morgan v. Commissioner of Social Security Administration</u>, 169 F.3d 595, 600 (9th Cir. 1999).

Since no other physician gives a contradictory opinion to Dr. Stark,  the ALJ must give clear and convincing reasons for rejecting Dr. Stark's opinion.  With regard to plaintiff's work, not only was it seasonal work, but plaintiff's employer was very flexible, allowing plaintiff to take time off when his painful lesions required lancing and healing.  Furthermore, plaintiff's condition has worsened since he was laid off; he now suffers from severe spinal stenosis.  As a result, the fact that plaintiff worked for a nursery seasonally is not a clear and convincing reason to reject Dr. Stark's opinion as to plaintiff's limitations.

As for plaintiff's activities, he testified that he mows the yard when he feels up to it, tries to keep the place clean, goes fishing occasionally, likes to hunt but has not been able to do much of that anymore, plays video games, drives his wife to work, meets friends for coffee, and watches his 18-year old who has special needs.  His son just "needs attention to keep him on task."  Tr. 198.   Grace Chadwick clarified that plaintiff was able to go fishing twice in 2004, and maybe hunting twice.  She testified that in 2005, he did not go fishing at all, and he took his nephew hunting a couple of weekends, but had to come home because he was not feeling well.  Plaintiff's activities are not so substantial that they constitute a clear and convincing reason to reject Dr. Stark's opinion as to plaintiff's limitations.

III.    <u>Appropriate Remedy</u>

The question remains whether the case should be remanded for further proceedings or should be remanded for the payment of benefits.  The court has the discretion to remand the case for additional evidence and findings or to award benefits.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996).  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be

resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. <u>Id.</u> If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178-79 (9th Cir. 2000), <u>cert. denied,</u> 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. <u>Id.</u> On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004).

Here, the ALJ improperly rejected plaintiff's testimony about his limitations, and improperly rejected the opinion of plaintiff's treating physician. Plaintiff testified that his left arm is numb, he experiences neck pain and migraine headaches, suffers from pain as a result of his lesions and is illiterate. He also testifies that he takes Tylenol with Codeine for pain, but will not take it if he will be driving. Given these limitations, it is clear from the record that plaintiff cannot perform his past relevant work, or any of the jobs identified by the VE.

**CONCLUSION**

The decision of the Commissioner is reversed.  The case is remanded for a finding of

disability.

IT IS SO ORDERED.

Dated this ____23rd_____ day of March, 2007.


                                  ____/s/ Garr M. King_____
                                  Garr M. King
                                  United States District Judge